UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Health Carousel, LLC,

    Plaintiff,

v.

Ceesay & Associates Inc.,

    Defendant,

Case No. 1:20cv665

Judge Michael R. Barrett

**OPINION & ORDER**

This matter is before the Court upon Plaintiff Health Carousel LLC's Motion to Vacate or Modify Arbitration Award. (Doc. 12). Defendant Ceesay & Associates Inc. has filed a Response (Doc. 33) and Plaintiff Health Carousel has filed a Reply (Doc. 36).

**I.    BACKGROUND**

Plaintiff Health Carousel, LLC "facilitates the immigration of foreign healthcare workers by sponsoring them in the visa application process and upon issuance of a visa, either employs them for placement with healthcare organizations in the United States or arranges for direct placement as employees of those organizations." (Doc. 30-2, PAGEID 1061-1062). Defendant Ceesay & Associates, Inc. is operated by Morro Ceesay, who is an immigration attorney. (Doc. 30-2, PAGEID 1061). In 2014, Ceesay began working with nurses in Africa who were interested in obtaining a visa in order to immigrate to the United States and work in the healthcare industry. (Doc. 30-2, PAGEID 1061).

On June 23, 2017, Health Carousel and Ceesay entered into a Recruitment Agreement. (Doc. 30-2, PAGEID 1062). Under the Recruitment Agreement, Ceesay was to recruit prospective employee nurses; and Health Carousel was to serve as an

employee-sponsor as part of the extensive process necessary for the nurses to obtain a visa. (Doc. 30-2, PAGEID 1062).

The Recruitment Agreement contained a provision that "[a]ny dispute, controversy or claim arising out of or relating to this contract, including the formation, interpretation, breach of termination thereof, including whether the claims asserted are arbitrable, will be referred to and finally determined by arbitration in accordance with the JAMS International Arbitration Rules." (Doc. 30-2, PAGEID 1059). Following a disagreement over reimbursement of costs and the processing of visa applications, Ceesay filed for arbitration seeking damages based on breach of contract, unjust enrichment, fraudulent misrepresentation, fraudulent concealment and negligent misrepresentation. (Doc. 30-2, PAGEID 1059). Health Carousel counterclaimed for breach of contract, indemnification, tortious interference with business and contract relationship, defamation, as well as declaratory relief. (Doc. 30-2, PAGEID 1059). After hearings on November 19-21, 2019 and January 14-15, 2020, the arbitration panel found in favor of Ceesay and on July 14, 2020, entered a Final Award in the amount of $593,745.75. (Doc. 10-2, PAGEID 465). This amount included damages, arbitration costs and attorney fees. (Doc. 30-2, PAGEID 1080). The panel awarded nothing to Health Carousel on its counterclaim. (Doc. 30-2, PAGEID 1080).

Health Carousel maintains that this Court should vacate the Final Award because in issuing the Final Award, the arbitrators exceeded their authority, were guilty of misconduct in refusing to postpone the arbitration hearing, and acted with partiality. In the alternative, Health Carousel argues that this Court should modify the Final Award and eliminate any monetary damages for Ceesay, including fees.

## II. ANALYSIS

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, codifies "a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008). "In attempting to vacate or modify an arbitration award governed by the Federal Arbitration Act, a disappointed party must look to sections 10 and 11 of Title 9, which 'provide [the] exclusive regime[ ] for the review provided by the [Federal Arbitration Act].'" *Grain v. Trinity Health, Mercy Health Servs. Inc.*, 551 F.3d 374, 378 (6th Cir. 2008) (quoting *Hall St. Assocs. v. Mattel, Inc.*, 552 U.S. 576, 128 S.Ct. 1396, 1406, 170 L.Ed.2d 254 (2008)).

Section 10 of the FAA provides that a court may only vacate an arbitration award in the following instances:

> (1) where the award was procured by corruption, fraud, or other means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). Health Carousel moves to vacate the Final Award based on subsections (2), (3) and (4).[1]

---

[1] In its complaint filed in state court, Health Carousel only cited to Ohio Revised Code § 2711.10 as a basis for vacating or modifying the Final Award. (Doc. 1-1). Ohio Revised Code § 2711.10 contains language almost identical to 9 U.S.C. § 10(a). Accordingly, the parties cite to Ohio and federal law interchangeably. Because there is no distinguishable difference between Ohio and federal law, the Court will conduct its analysis under federal law.

3

However, "[i]t is well established that courts should play only a limited role in reviewing the decisions of arbitrators." *Shelby County Health Care Corp. v. A.F.S.C.M.E., Local 1733*, 967 F.2d 1091, 1094 (6th Cir.1992). "[C]ourts may vacate an arbitrator's decision 'only in very unusual circumstances.'" *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568, 133 S. Ct. 2064, 2068, 186 L. Ed. 2d 113 (2013) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). Under the FAA, "[t]hinly veiled attempts to obtain appellate review of an arbitrator's decision" are not permitted. *Gingiss International Inc. v. Bormet*, 58 F.3d 328, 333 (7th Cir.1995). "If parties could take 'full-bore legal and evidentiary appeals,' arbitration would become 'merely a prelude to a more cumbersome and time-consuming judicial review process.'" *Oxford Health Plans*, 569 U.S. at 568-69 (quoting *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 588, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008)).

Unfortunately, this case has turned into exactly that: a cumbersome and time-consuming judicial review process. The Court now turns to Health Carousel's proposed basis for vacating the Final Award.

### A. Arbitrators' authority

Health Carousel first argues that the Final Award should be vacated under 9 U.S.C. § 10(a)(4) because the arbitrators exceeded their authority. As the Supreme Court has explained, a party seeking to set aside an arbitral award under § 10(a)(4) of the Act bears a heavy burden:

> "It is not enough ... to show that the [arbitrator] committed an error—or even a serious error." *Stolt–Nielsen*, 559 U.S., at 671, 130 S.Ct. 1758. Because the parties "bargained for the arbitrator's construction of their agreement," an arbitral decision "even arguably construing or applying the contract" must stand, regardless of a court's view of its (de)merits. *Eastern Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62, 121 S.Ct. 462, 148 L.Ed.2d

4

>354 (2000) (quoting *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Paperworkers v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); internal quotation marks omitted). Only if "the arbitrator act[s] outside the scope of his contractually delegated authority"—issuing an award that "simply reflect[s] [his] own notions of [economic] justice" rather than "draw[ing] its essence from the contract"—may a court overturn his determination. *Eastern Associated Coal*, 531 U.S., at 62, 121 S.Ct. 462 (quoting *Misco*, 484 U.S., at 38, 108 S.Ct. 364).

*Oxford Health Plans*, 569 U.S. at 569. Therefore, the sole question for this Court "is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Id*.

However, Health Carousel makes several arguments which amount to nothing more than arguments that the arbitrators got the meaning of the parties' contract wrong. First, Health Carousel argues that the arbitrators were confused regarding modifications to Exhibit B to the Recruitment Agreement—which Health Carousel concedes were properly made—and amendments to Recruitment Agreement itself—which Health Carousel maintains were not permitted under the terms of the Recruitment Agreement. In addition, Health Carousel argues that the arbitrators' finding of indefinite waiver contradicted the plain language of the Recruitment Agreement.

While it could be argued that the arbitrators did not strictly adhere to the express language of the Recruitment Agreement, that was only because the arbitrators found that the parties had amended the Recruitment Agreement. The arbitrators also found that Health Carousel had waived the requirement in the Recruitment Agreement that any amendment to the Recruitment Agreement be in writing and signed by the parties. The Court cites to the arbitrators' decision at length here so there is no room for misinterpretation of their decision:

5

> Ceesay seeks damages for non-payment of the SAP Expenses for each SAP nurse under contract with HC. HC argues in response that it is not liable for these expenses because any amendment to the RA must be in writing and signed by the parties (§ 11.7), While there are e-mails that express agreement on these terms, they are not signed.
>
> Ohio, however, does not favor such provisions in contracts, particularly where the parties waived the provision by their conduct. "'[W]aiver by estoppel' exists when the acts and conduct of a party are inconsistent with an intent to claim a right and have been such as to mislead the other party to his prejudice and thereby estop the party having the right from insisting upon it." (Emphasis omitted.) *Lewis & Michael Moving & Storage, Inc. v. Stofcheck Ambulance Serv., Inc*., 10th Dist. No. 05AP-662, 2006 Ohio 3810, ¶29, quoting *Natl. City Bank v. Rini*, 162 Ohio App.3d 662, 2005 Ohio 4041, ¶24, quoting *Mark-It Place Foods* at ¶57. Whether a party's inconsistent conduct amounts to waiver involves a factual determination within the province of the trier of fact. *EAC Props., LLC v. Brightwell*, 2011-Ohio-2373, ¶ 22 (10th Dist.)
>
> Here, HC waived the writing by agreeing in emails to make the payments, Mr. Ceesay's relying on that, and HC's continuing to operate on that agreement though disagreeing with Mr. Ceesay on timing of the payments. Both Ms. Glaser and Ms. Ponchot testified that HC did agree to pay the SAP Expenses: $350 for administration and $65 for the study book per candidate. And HC paid $166,000 of SAP Expenses for 400 SAP nurses, the total of the November and December 2018 invoices.

(Doc. 30-2, PAGEID 1073).  Based on the foregoing, the Court concludes that the arbitrators were arguably construing or applying the Recruitment Agreement and the award draws its essence from the agreement.

While Health Carousel argues that it did not agree to pay for the SAP Expenses, the Sixth Circuit has made it clear that:

> "[C]ourts must refrain from reversing an arbitrator simply because the court disagrees with the result or believes the arbitrator made a serious *legal* or factual error." *Id*. (emphasis added).  And "[i]f a court can find any line of argument that is legally plausible and supports the award then it must be confirmed."  *Merrill Lynch, Pierce, Fenner & Smith v. Jaros*, 70 F.3d 418, 421 (6th Cir.1995).

*Solvay Pharms., Inc. v. Duramed Pharms., Inc.*, 442 F.3d 471, 476 (6th Cir. 2006) (emphasis in original). Therefore, the Court concludes that Health Carousel has not carried its burden of proving that the arbitrators exceeded their authority by entering a Final Award in favor of Ceesay.

Yet, Health Carousel makes an additional argument here. Health Carousel maintains that even if Ceesay was the prevailing party, the arbitrators still exceeded their authority by awarding fees to Ceesay. Health Carousel points out that the Recruitment Agreement does not provide for any costs or fees to either party. Ceesay responds that the parties agreed that arbitration would be conducted under the JAMS International Arbitration Rules; and Rule 37 of the Rules allows a panel to apportion arbitration costs, including reasonable costs of legal representation, among the parties when it finds that it is reasonable to do so. *See* JAMS International Arbitration Rules 37.4 (effective Sept. 1, 2016) ("The Tribunal will fix the arbitration costs in its award. The Tribunal may apportion such costs among the parties if it determines that such apportionment is reasonable, taking into account the circumstances of the case."). Health Carousel acknowledges this provision in the Rules, but citing to Rule 31.2, Health Carousel argues that it only applies where there has been a finding of "dilatory or bad faith conduct in the arbitration." This not what Rule 31.2 provides. The Rule instead provides:

> Unless the parties agree otherwise, the parties expressly waive and forgo any right to punitive, exemplary or similar damages, unless a statute requires that compensatory damages be increased in a specified manner. This provision will not limit the Tribunal's authority to take into account a party's dilatory or bad faith conduct in the arbitration in apportioning arbitration costs between or among the parties.

7

JAMS International Arbitration Rules 31.2 (effective Sept. 1, 2016). Therefore, the arbitrators were never *required* to make a determination with regards to Health Carousel's dilatory or bad faith conduct, but were free to consider such conduct in awarding fees to Ceesay.

### B. Misconduct

Next, Health Carousel argues that under 9 U.S.C. § 10(a)(3), the Court should vacate the Final Award because the arbitrators were guilty of misconduct in refusing to postpone the hearing. Health Carousel explains that Ceesay withheld documents until the eve of the arbitration hearing and also presented a number of surprise witnesses at the hearing. Health Carousel maintains that it was unable to adequately review and use the documents during the arbitration, or prepare to examine the witnesses, which prejudiced the presentation of their counterclaims and defenses.

According to Ceesay, this delay was Health Carousel's own doing. The Court has reviewed the rulings of the arbitrators as well as the correspondence between the arbitrators and the parties. It appears that there was an unresolved issue with regard to the search terms being proposed by Health Carousel. Discovery was set to close on September 28, 2019. (Doc. 12-8, PAGEID 685). On September 20, 2019, the arbitrators explained to counsel for Health Carousel:

> What you neglected to include in your chronology (among other things) is that the Panel twice responded that your proposed search terms included those that were ridiculously overbroad. Searching with those terms would have been meaningless, and Ceesay could have just as easily provided every e-mail without any search. It's not helpful to the Panel to simply ask again that we order all the highlighted terms, which we've already responded to.

8

(Doc. 33-22, PAGEID 1261).  Health Carousel later asked for the discovery deadline to be extended to October 11, 2019, and explained that the extension would not affect the dates scheduled for arbitration, which were November 19-21, 2019.  (Doc. 33-19, PAGEID 1253-1254).  The arbitrators granted the extension and did not move the dates for arbitration.  (Doc. 33-21 PAGEID 1258).  Then, despite its earlier representation that the arbitration would not need to be delayed, on November 1, 2019, Health Carousel requested that the hearing be postponed.  (Doc. 33–9, PAGEID 1161).  The arbitrators denied this request, but permitted Health Carousel to depose Ceesay for a second time to question him about the new discovery documents.  (Doc. 33-10, PAGEID 1163).

With regard to the "surprise" witnesses, Ceesay points out that on November 6, 2019, the arbitrators set the November 14, 2019 deadline for witness lists based on an agreement of the parties.  (Doc. 33-12, PAGEID 1174-1175).  Before the hearing, Health Carousel argued to the arbitrators that all of the nurse witnesses should be stricken because of "surprise and unfair prejudice."  However, the arbitrators denied this request:

> The Panel set the schedule with the parties input and consent. The only order requiring witnesses was that they be disclosed on or before November 14. There was no requirement to summarize the scope or substance of testimony. Hence Health Carousel's request to strike witnesses is denied.
>
> We've already shared with the parties that if either party wishes to continue the hearing another day because of delayed discovery, surprise, or like issue, the Panel is willing to continue the hearing for another day.  If Health Carousel believes it is prejudiced by the testimony of the nurse witnesses, it may request an additional day of hearing to reply to their testimony.

(Doc. 7-9, PAGEID 375).  Ceesay points out that the arbitrators in fact permitted Health Carousel an additional two days to finish presenting its case; and at the conclusion of the hearing, Health Carousel did not request any more hearing days, nor did it claim that it had not had enough time to present its case.

9

These decisions by the arbitrators do not amount to misconduct. As one district court has explained:

> The standard for the Court's review of whether the arbitrators' decision constituted "misconduct" under § 10(a)(3) is "abuse of discretion." *Floyd Cnty. Bd. of Educ. v. EUA Cogenex Corp.*, 198 F.3d 245, 1999 WL 1023704, at *2 (6th Cir.1999) (unpublished table decision) (citing *Schmidt v. Finberg*, 942 F.2d 1571, 1573 (11th Cir.1991)). "To meet this standard, the party seeking to vacate the arbitration award must prove by clear and convincing evidence that the arbitrator had no reasonable basis for his decision." *Id*. (citing, *e.g., In re Time Constr., Inc.*, 43 F.3d 1041 (6th Cir. 1995)).

*Questar Cap. Corp. v. Gorter*, 909 F. Supp. 2d 789, 816–17 (W.D. Ky. 2012). Based on its review of the record, the Court concludes that the arbitrators had a reasonable basis for refusing to postpone the hearing. The arbitrators made every attempt to move discovery along but at the same time any avoid prejudice to Health Carousel by permitting a second deposition of Ceesay and scheduling an additional two days for the hearing. *Accord Floyd Co. Bd. of Educ. v. EUA Cogenex Corp.*, 198 F.3d 245 (6th Cir. 1999) ("Such a reasonable basis includes moving the case on to a conclusion where both parties had adequate notice and time to prepare, guarding against an apparent tactical maneuver to delay the proceedings, or simply guarding against unreasonable scheduling conflicts.").

Therefore, the Court concludes that Health Carousel has not carried its burden of proving that the Final Award should be vacated based on misconduct on the part of the arbitrators.

### C. Partiality

Health Carousel also argues under 9 U.S.C. § 10(a)(2) that the Court should vacate the Final Award because the arbitrators acted with "partiality."

10

An arbitrator acts with partiality "where a reasonable person would have to conclude that [the] arbitrator was partial to one party to the arbitration." *Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 328 (6th Cir. 1998). "The alleged partiality must be direct, definite, and capable of demonstration, and 'the party asserting [it] . . . must establish specific facts that indicate improper motives on the part of the arbitrator.'" *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000) (quoting *Andersons, Inc.*, 166 F.3d at 329).

In support of its argument that the arbitration award should be vacated because of evident partiality, Health Carousel explains that Ceesay never raised a claim for breach of the implied duty of good faith, but the arbitrators raised the claim themselves and then used that claim to support the Final Award.

This argument is not supported by the record. The arbitrators explained that Ceesay set forth three claims for breach of contract. The arbitrators only found in favor of Ceesay on one of these claims. (Doc. 30-2, PAGEID 1071). The arbitrators specifically rejected Ceesay's claim that Health Carousel breached the implied covenant of good faith and fair dealing in its processing of applications. The Court again cites at length to the arbitrators' decision so that this point is clear:

> In the RA, § 3(g), HC provided that it did not guarantee employment or a visa for any nurse. Thus, there can be no claim for breach based on the simple failure to obtain a visa or employment for any nurse.
>
> Ceesay, argues, though, that HC breached the implied covenant of good faith and fair dealing in its processing of applications. *See, e.g., Lucarell v. Nationwide Mut. Ins. Co.*, 97 N.E.3d 458, 469 (Ohio 2018). There are two aspects to this.
>
> The first aspect is that we find that HC breached the covenant in concealing from Ceesay and the nurses the reason HC's applications were being denied and why HC significantly slowed and ultimately stopped new

11

> applications. As to that breach of the RA, however, we can only speculate as to the damages, if any, sustained by Ceesay, and thus cannot award any damages on this breach.
>
> We would be speculating as to how many, if any, of the remaining TAP and SAP nurses would ultimately obtain a visa, let alone work for or through HC, or for how long, thereby entitling Ceesay to his R&R Fees. There are simply too many reasons why a TAP or SAP nurse may never be issued a visa. They may not be able to obtain all necessary certifications; they may abandon the process as too arduous and lengthy; they may not be considered employable by a CO; etc. As to the SAP nurses, they may not ever take or pass the NCLEX exam. Moreover, even if they are issued a visa and employed, they may be fired for any host of reasons. We are left to speculate on these and other potential issues when trying to quantify Ceesay's damages beyond payment of the SAP Expenses, which are not speculative and for which there exists a reasonable basis for calculation. Had HC disclosed the issues it was facing, it would have saved a great deal of anguish and suffering, but it would not have resulted in more applications being accepted.
>
> The second aspect is that we find that HC did not show bad faith in its filing of applications. It spent an extraordinary amount of time and expense to gather the necessary information and documents for the applications, pay the application fees, and respond to the RFEs and NOIDs. HC very much wanted to obtain the visas and obtain employment for the nurses. HC could earn potentially over one hundred million dollars by obtaining visas for and placing all the nurses for the full term of their contracts. The denials stemmed from a change in approach at the USCIS, not from lack of effort by HC.

(Doc. 30-2, PAGEID 1071-1072) (footnote omitted). Therefore, even if the arbitrators did in fact raise this claim on behalf of Ceesay, they also rejected the claim. Under no circumstances does this establish specific facts which indicate improper motives on the part of the arbitrators.

Nevertheless, it was clear that the arbitrators did not care for the manner in which Health Carousel conducted business. The arbitrators included this statement at the end of their written decision:

> We close with these observations. When all is said and done, the biggest losers here were the almost 1,000 nurses, many of whom no doubt worked

> very hard as required by their contracts with HC and who dreamed of a better life for them and their families in the United States. Many of them came from poverty-stricken areas in Africa where daily life is a struggle. HC, through its deceptive course of conduct made many of these nurses' lives worse, not better. We realize that we cannot afford any relief to these nurses here as they are not parties to this proceeding, but just because we have not awarded substantial damages, including punitive damages to Ceesay, does not mean that we do not fully appreciate the financial and emotional toll HC's conduct took on the nurses and their relationship with Ceesay. Except for referring the nurses to HC in good faith, Ceesay did not contribute to these unfortunate and detrimental effects on the nurses.

(Doc. 30-2, PAGEID 1079-1080) (footnoted omitted). Even if this statement could be read as indicating an appearance of bias, that is not enough to vacate the Final Award. *See Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 308 (6th Cir. 2008) ("It is not enough to demonstrate an amorphous institutional predisposition toward the other side, because that would simply be the appearance-of-bias standard that we have previously rejected."). Instead, Health Carousel must be able to show that a reasonable person would have to conclude that the arbitrators were partial to Ceesay. The statement quoted above does not do this. Instead, it is merely an acknowledgement of the unfortunate situation the nurses had found themselves in. Because Health Carousel has not pointed to anything to establish partiality, there is no basis to vacate the award on this ground.

### D. Modification of the award

Health Carousel argues that if the Court does not vacate the Final Award, in the alternative, the Court should modify it under 9 U.S.C. § 11 to eliminate any monetary damages for Ceesay, including fees.

Under the FAA, a federal district court:

make an order modifying or correcting the award upon the application of any party to the arbitration--

13

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
>
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
>
> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.
>
> The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

9 U.S.C. § 11. Here, Health Carousel asks the Court to "promote justice between the parties" by honoring the intent of the parties when entering into the Recruiting Agreement. This amounts to nothing more than a re-packaging of its earlier arguments which the Court has rejected. Moreover, Section 11 "forbids modifying an award when the modification will affect the merits of the controversy." *NCR Corp. v. Sac-Co.*, 43 F.3d 1076, 1081 (6th Cir. 1995).

Based on the foregoing, the Court concludes that Health Carousel has not carried its substantial burden of showing that the Final Award should be either vacated or modified under Sections 10 or 11 of the FAA.

### E. Relief sought by Ceesay

In its Response to Health Carousel's Motion to Vacate or Modify Arbitration Award, Ceesay makes the following requests for relief: (1) denial of Health Carousel's Motion; (2) confirmation of the Interim Award (Doc. 30-2), Interim Fee Award (Doc. 33-17), and Final Award (Doc. 33-16) in the amount of $593,745.75; (3) confirmation of the award of costs and attorney fees in the amount of $16,987.56 (Doc. 33-18) related to Health Carousel's "bad faith" conduct and "flagrant disregard" for the parties' Protective Order; (4) confirmation of post-award interest compounded annually from July 2, 2020 at a rate

of 5% as ordered in the Final Award; (5) dismissal of Health Carousel's Complaint and Amended Complaint; and (6) an award of reasonable attorney fees and costs for defending against Health Carousel's action to vacate or modify the arbitration award.

Under the FAA, "[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. Here, the parties agreed in the Recruitment Agreement that "Judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof." (Doc. 30-1, PAGEID 1051). However, Health Carousel maintains that Ceesay cannot seek confirmation of the award because it did not file a motion seeking confirmation of the award within the one-year deadline in 9 U.S.C. § 9.

The application of Section 9 is not completely straightforward. Health Carousel acknowledges that there is a circuit split regarding whether the language of Section 9 is merely permissive, or whether the language creates a mandatory statute of limitations. *See General Elec. Co. v. Anson Stamping Co. Inc.*, 426 F. Supp. 2d 579, 583 (W.D. Ky. 2006). Health Carousel, of course, advocates for this Court to side with those federal circuit courts outside the Sixth Circuit which have decided that the language in Section 9 is a one-year, mandatory deadline. However, as the district court in *General Elec. Co. v. Anson Stamping Co. Inc.* has explained:

> A number of decisions involving the Federal Arbitration Act discuss when the one-year statute of limitations of § 9 may be satisfied by proceedings

15

> short of an express motion to confirm. . . . They now bear discussion if for no other reason than to demonstrate that the statute of limitations of § 9 is not sacrosanct in the sense that a specifically denominated "motion to confirm" needs to be filed to meet the one-year deadline. The procedural equivalent of a motion to confirm will suffice even if not denominated as such.

426 F. Supp. 2d at 591. After a lengthy, detailed discussion of the authority which supports treating other types of motions as implicitly seeking confirmation of an award, the district court in *Anson* analyzed the motion filed by the defendant and concluded as follows:

> Because the motion to dismiss filed by Anson expressly requested the affirmation of the arbitration award, and the parties fully argued the merits of the award under the applicable standard of § 10 of the Act, the Court concludes that Anson's motion to dismiss GE's motion to vacate is in all respects the practical equivalent of a motion to confirm and should be so construed for the purpose of the one-year statute of limitations of § 9. To hold otherwise would work a grave injustice to the underlying policies that support the Arbitration Act, which is "intended to be a speedy, efficient and relatively inexpensive method of resolving disputes." *See Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 510–11, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). None of these policy considerations will be served by this Court unnecessarily forcing Anson to begin a separate action at law in an attempt to enforce an arbitration award that Anson has already requested this Court to affirm in timely fashion. The Court accordingly deems Anson's motion to dismiss to be a timely filed motion for confirmation.

*Id*. at 595. This Court has cited this passage from the decision at length because the identical circumstances exist here. The parties have fully argued whether the Final Award should be vacated or modified under the applicable standard of § 10 of the FAA. The Final Award was entered on July 17, 2020. (Doc. 10-2). Ceesay filed its Motion to Dismiss with this Court on September 1, 2020. (Doc. 5). Ceesay explicitly sought confirmation of the Final Award in its Motion to Dismiss. (Doc. 5, PAGEID #260) (For the reasons stated in this Motion and Memorandum in Support, Ceesay requests that this Court enter an Order . . . . confirming the Arbitration Award"). Because this filing is well

16

within the one-year deadline of 9 U.S.C. § 9, the Court rejects Health Carousel's argument that Ceesay's request for confirmation of the award is untimely.

As to the award of attorney fees, the Court notes that the Sixth Circuit has explained that "there is nothing in the Federal Arbitration Act which provides attorneys' fees to a party who is successful in seeking confirmation of an arbitration award in federal courts." *Crossville Med. Oncology, P.C. v. Glenwood Sys., LLC*, 610 F. App'x 464, 467 (6th Cir. 2015) (quoting *Menke v. Monchecourt*, 17 F.3d 1007, 1009 (7th Cir. 1994)). Therefore, any request for attorney fees based solely on the confirmation of the Final Award is denied.

### III. CONCLUSION

Accordingly, Plaintiff Health Carousel LLC's Motion to Vacate or Modify Arbitration Award (Doc. 12) is **DENIED**. In addition, the Court orders confirmation of the Interim Award (Doc. 30-2), Interim Fee Award (Doc. 33-17), and Final Award (Doc. 33-16) in the amount of $593,745.75; confirmation of the award of costs and attorney fees in the amount of $16,987.56 (Doc. 33-18) related to Health Carousel's "bad faith" conduct and "flagrant disregard" for the parties' Protective Order; and confirmation of post-award interest compounded annually from July 2, 2020 at a rate of 5% as ordered in the Final Award. There being no remaining matters pending for disposition, this case is **CLOSED and TERMINATED** from the active docket of this Court.

IT IS SO ORDERED.

                                            */s/ Michael R. Barrett*
                                            JUDGE MICHAEL R. BARRETT